1   ROBERT G. DREHER
2   Acting Assistant Attorney General
    Environment & Natural Resources Division
3   United States Department of Justice

4   LORI JONAS (Bar No. 158268)
5   Senior Attorney
    Telephone: (202) 514-4080
6   Environmental Enforcement Section
    Environment & Natural Resources Division
7   United States Department of Justice
    P.O. Box 7611
8   Washington, D.C.  20044

9   **Attorneys for Plaintiff United States of America**
10

11  CATHERINE T. REDMOND (Bar No. 226957)
    District Counsel
12  Telephone:  (559) 230-6033
    San Joaquin Valley Unified Air Pollution Control District
13  1990 E. Gettysburg Avenue
    Fresno, California 93726
14
    **Attorney for Plaintiff San Joaquin Valley**
15  **Unified Air Pollution Control District**

16              UNITED STATES DISTRICT COURT FOR THE
17
                 EASTERN DISTRICT OF CALIFORNIA
18

19

20  UNITED STATES OF AMERICA and          )
    SAN JOAQUIN VALLEY UNIFIED            )
21  AIR POLLUTION CONTROL DISTRICT        )
                                          )
22              Plaintiffs,               )     Case No.
                                          )
23        v.                              )
                                          )
24  POST HOLDINGS, INC. and               )     **CONSENT DECREE**
    RALCORP HOLDINGS, INC.                )
25                                        )
                                          )
26              Defendants.               )
    _____        )

27

28

I.      JURISDICTION AND VENUE ......................................................................... 1

II.     APPLICABILITY ............................................................................................. 2

III.    DEFINITIONS .................................................................................................. 3

IV.     CIVIL PENALTY ............................................................................................. 6

V.      COMPLIANCE REQUIREMENTS ................................................................. 7

VI.     REPORTING REQUIREMENTS .................................................................. 14

VII.    STIPULATED PENALTIES .......................................................................... 16

VIII.   FORCE MAJEURE ........................................................................................ 20

IX.     DISPUTE RESOLUTION .............................................................................. 22

X.      INFORMATION COLLECTION AND RETENTION .................................. 24

XI.     EFFECT OF SETTLEMENT/RESERVATION OF RIGHTS ....................... 26

XII.    COSTS ............................................................................................................ 27

XIII.   NOTICES ....................................................................................................... 28

XIV.    EFFECTIVE DATE ........................................................................................ 29

XV.     RETENTION OF JURISDICTION ................................................................ 29

XVI.    MODIFICATION ........................................................................................... 30

XVII.   TERMINATION ............................................................................................. 30

XVIII.  PUBLIC PARTICIPATION ........................................................................... 31

XIX.    SIGNATORIES/SERVICE ............................................................................ 31

XX.     INTEGRATION ............................................................................................. 32

XXI.    FINAL JUDGMENT ...................................................................................... 32

1   WHEREAS, Plaintiff UNITED STATES OF AMERICA, on behalf of the United States

2   Environmental Protection Agency ("EPA"), and the SAN JOAQUIN VALLEY UNIFIED AIR

3   POLLUTION CONTROL DISTRICT ("District"), have filed a Complaint concurrently with this

4   Consent Decree, alleging that defendants POST HOLDINGS, INC. and RALCORP

5   HOLDINGS, INC. ("Defendants") violated and/or continue to violate the Clean Air Act ("CAA"

6   or "the Act"), 42 U.S.C. § 7401 *et seq.*, including the California State Implementation Plan

7   authorized by Section 110(a) of the Act, 42 U.S.C. § 7410 *et seq.*, with regard to their ownership

8   and operation of a breakfast cereal manufacturing facility in Modesto, California (the "Facility");

9   WHEREAS, the Complaint seeks injunctive relief and the assessment of civil penalties

10   for alleged violations of District rules promulgated under the California State Implementation

11   Plan related to Defendants' ownership and operation of the Facility;

12   WHEREAS, the Facility was owned and operated by Kraft Foods, Inc. from 1975 until

13   August 4, 2008, and by Defendant Ralcorp Holdings, Inc. from August 4, 2008 until February 3,

14   2012 and is now currently owned and operated by Defendant Post Holdings, Inc.;

15   WHEREAS, EPA issued notices of violation ("NOVs") to Defendant Ralcorp Holdings,

16   Inc. with respect to such allegations on July 16, 2009;

17   WHEREAS, EPA issued NOVs to Kraft Foods, Inc. with respect to such allegations on

18   August 18, 2009;

19   WHEREAS, the District issued NOVs to Kraft Foods, Inc. with respect to such

20   allegations on October 8, 2009;

21   NOW, THEREFORE, without the adjudication or admission of any issue of fact or law

22   except as provided in Section I, without the admission of the liabilities in the Complaint, and

23   with the consent of the Parties, IT IS HEREBY ADJUDGED, ORDERED, AND DECREED as

24   follows:

## I.   **JURISDICTION AND VENUE**

26   1.  This Court has jurisdiction over the subject matter of this action under Section 113(b)

27       of the Act, 42 U.S.C. § 7413(b), and under 28 U.S.C. §§ 1331, 1345, 1355 and

28       1367(a), and over the parties.  This Court has supplemental jurisdiction over the State

law claims asserted by the District pursuant to 28 U.S.C. § 1367. Venue is proper in this district under Section 113(b) of the Act, 42 U.S.C. § 7413(b), and 28 U.S.C. §§ 1391 and 1395, because it is the judicial district in which the violations alleged in this Complaint have occurred and are occurring.

2. For purposes of this Consent Decree, Defendants agree that the Complaint states claims upon which relief may be granted pursuant to Section(s) 113(a)(1)(C) and 113(b)(1) of the Clean Air Act, 42 U.S.C. §§ 7413(a)(1)(C) and 7413(b)(1).

## II.    APPLICABILITY

3. The obligations of this Consent Decree apply to and are binding upon the United States and the District, and upon Defendants and any successors, assigns, or other entities or persons otherwise bound by law.

4. No transfer of ownership of the Facility, whether in compliance with the procedures of this Paragraph or otherwise, shall relieve Defendants of their obligation to ensure that the terms of the Consent Decree are implemented. Defendants shall provide a copy of this Consent Decree to any proposed transferee. At least 30 Days prior to a transfer of ownership, Defendants shall provide a copy of this Consent Decree to the proposed transferee and shall simultaneously provide written notice of the prospective transfer, together with a copy of the proposed written agreement, to the United States, in accordance with Section XIII (Notices) of this Consent Decree. Any attempt to transfer ownership of the Facility without complying with this Paragraph constitutes a violation of this Consent Decree.

5. Defendants shall provide a copy of this Consent Decree to all officers, employees, and agents whose duties might reasonably include compliance with any provision of this Decree.

6. In any action to enforce this Consent Decree, Defendants shall not raise as a defense the failure by any of their officers, directors, employees, agents, or contractors to take any actions necessary to comply with the provisions of this Consent Decree.

Consent Decree                    2

### III. __DEFINITIONS__

7. Terms used in this Consent Decree that are defined in the Act or in regulations promulgated pursuant to the Act shall have the meanings assigned to them in the Act or such regulations, unless otherwise provided in this Consent Decree. Whenever the terms set forth below are used in this Consent Decree, the following definitions shall apply:

    a. "Bran Cereal Coating Reels" shall mean the five existing coating reels that are utilized on the Bran Cereal Line denoted by SJVUAPCD permit number N-1933-3-7.

    b. "Bran Cereal Line" shall mean the existing cereal processing operation at the Facility denoted by SJVUAPCD permit number N-1933-3-7.

    c. "Complaint" shall mean the complaint filed by the United States and the District in this action;

    d. "Consent Decree" or "Decree" shall mean this consent decree;

    e. "Date of Lodging" shall mean the date that this Consent Decree is lodged in federal district court;

    f. "Day" shall mean a calendar day unless expressly stated to be a business day. In computing any period of time under this Consent Decree, where the last day would fall on a Saturday, Sunday, or federal holiday, the period shall run until the close of business of the next business day;

    g. "Defendants" shall mean Post Holdings, Inc. and Ralcorp Holdings, Inc.;

    h. "District" or "SVJUAPCD" shall mean the San Joaquin Valley Unified Air Pollution Control District;

    i. "EPA" shall mean the United States Environmental Protection Agency and any of its successor departments or agencies;

Consent Decree          3

j.   "Effective Date" shall have the definition provided in Section XIV of this Consent Decree;

k.   "Facility" shall mean the breakfast cereal manufacturing facility located in Modesto, California that was owned and operated by Defendant Ralcorp Holdings, Inc. from August 4, 2008 until February 3, 2012 and is currently owned and operated by Defendant Post Holdings, Inc.;

l.   "Finished Cereal Dryer" shall mean the existing natural gas dryer on the Bran Cereal Line at the Facility denoted by SJVUAPCD permit number N-1933-3-7.

m.   "Grape Nuts Dryers" shall mean the existing dryers on the Grape Nuts Process Line at the Facility denoted by SJVUAPCD as "System #11" on permit number N-1933-4-2.

n.   "Grape Nuts Oven" shall mean the existing oven line on the Grape Nuts Process Line at the Facility denoted by SJVUAPCD permit number N-1933-4-2.

o.   "Grape Nuts Process Line" shall mean the existing cereal line at the Facility denoted by SJVUAPCD permit number N-1933-4-2.

p.   "Malfunction" shall mean a sudden and unavoidable failure or breakdown of air pollution control equipment that:  (i) is caused by circumstances beyond the control of the Defendants; (ii) is not the result of intent, neglect, or disregard of air pollution control laws, rules or regulations; (iii) is not the result of improper maintenance; and (iv) is not an excessively recurrent breakdown of the same equipment.

q.   "Natural Draft Opening" shall mean any permanent opening in an oven that remains open during operation of the facility and is not connected to a duct in which a fan is installed.

Consent Decree                          4

r.   "Operating Pressure" shall mean the static pressure indicated by a gauge or pressure transmitter in part of a system.

s.   "Paragraph" shall mean a portion of this Decree identified by an Arabic numeral;

t.   "Parties" shall mean the United States, the District, and Defendants;

u.   Regenerative Thermal Oxidizer ("RTO") shall mean an air pollution control device rated at 8.959 MMBTU/HR and 31,500 standard cubic feet per minute ("SCFM") (or an equivalent manufacturer and model) as described in SJVAPCD permits N-1933-3-7 and N-1933-4-2.

v.   " RTO Minimum Temperature" shall mean the minimum RTO chamber temperature averaged over a 30-consecutive-minute block period.

w.   "Section" shall mean a portion of this Decree identified by a roman numeral;

x.   "State" shall mean the State of California;

y.   "STPD 10" shall mean the exhaust ducting before the fan for the Bran Cereal Coating Reels connected to the Finished Cereal Dryer.

z.   "STPD 11" shall mean the exhaust ducting before the fan for the Bran Cereal Coating Reels not connected to the Finished Cereal Dryer.

aa.  "United States" shall mean the United States of America, acting on behalf of EPA.

bb.  "VOC" or "VOCs" shall mean volatile organic compounds as defined by 40 C.F.R. §51. 100(s).

cc.  "VOC Reduction Efficiency" shall be determined by a compliance test and shall mean:

$$\left(\frac{[C_{in} - C_{out}]}{C_{in}}\right) x \ 100$$

Consent Decree                    5

Where $C_{in}$ is the concentration of VOCs at the inlet of the RTO and $C_{out}$ is the concentration of VOCs at the outlet of the RTO.

## IV.    CIVIL PENALTY

8.  Within 30 Days of the Effective Date, Defendants shall pay the sum of $317,500 as a civil penalty to the United States, together with interest accruing from the Date of Lodging, at the rate specified in 28 U.S.C. § 1961 as of the Effective Date.

9.  Defendants shall pay the civil penalty due by FedWire Electronic Funds Transfer ("EFT") to the U.S. Department of Justice in accordance with written instructions to be provided to Defendants, following entry of the Consent Decree, by the Financial Litigation Unit of the U.S. Attorney's Office for the Eastern District of California, 501 I Street, Suite 10-100, Sacramento, California 95814-2322, telephone number (916) 554-2700. At the time of payment, Defendants shall send a copy of the EFT authorization form and the EFT transaction record, together with a transmittal letter, which shall state that the payment is for the civil penalty owed pursuant to the Consent Decree in *United States et al. v. Post Foods, et al.*, and shall reference the civil action number and DOJ case number 90-5-2-1-10136, to the United States in accordance with Section XIII (Notices) of this Consent Decree; by email to cinwd_acctsreceivable@epa.gov; or by mail to:

> EPA Cincinnati Finance Office
> 26 Martin Luther King Drive
> Cincinnati, OH 45268

10.  Defendants shall not deduct any penalties paid under this Decree pursuant to this Section or Section VII (Stipulated Penalties) in calculating its federal, state and local income tax.

11.  Within 30 Days of the Effective Date, Defendants shall pay the sum of $317,500 as a civil penalty to the District, together with interest accruing from the Date of Lodging, at the rate specified in 28 U.S.C. § 1961 as of the Effective Date. Payment shall be made by delivery of a check made payable to the San Joaquin Valley Unified Air Pollution Control District and delivered by certified U.S. Mail to:

San Joaquin Valley Unified Air Pollution Control District
Attn: District Counsel's Office
1990 E. Gettysburg Avenue
Fresno, CA 93726

## V.    COMPLIANCE REQUIREMENTS

12.   VOC Control Requirements for the Grape Nuts Oven, Grape Nuts Dryers, Bran Cereal Coating Reels, and Finished Cereal Dryer:

   a. The RTO shall capture and control 95% of the VOC emissions from the Grape Nuts Oven, Grape Nuts Dryers, Bran Cereal Coating Reels, and Finished Cereal Dryer.

   b. Defendants shall operate the RTO such that it receives VOC emissions from the Grape Nuts Oven, Grape Nuts Dryers, Bran Cereal Coating Reels, and Finished Cereal Dryer at all times these units are being used for the production of cereal.

   c. Defendants shall operate the Grape Nuts Oven, Grape Nuts Dryers, Bran Cereal Coating Reels, and Finished Cereal Dryer such that all VOC emissions from these particular sources are vented to the RTO.

   d. Air flow through each natural draft opening ("NDO") shall be directed into an associated oven, dryer, or reel compartment that is ducted to the RTO.

   e. RTO Minimum Temperature:

      i. The RTO Minimum Temperature shall maintain at least 95% control efficiency for VOCs.

      ii. The RTO Minimum Temperature shall be established during compliance testing.

      iii. The RTO chamber temperature shall be in operation at or above the RTO Minimum Temperature during cereal manufacturing and within 24 hours after the completion of the initial compliance test.

   f.  Operating Pressure Ranges:

i. Within 30 days of the Effective Date of this Consent Decree, the Defendants shall install:  (A) a pressure gauge in the ducting being used to direct air flow to the RTO from the Grape Nuts Oven, two Grape Nuts Dryers, five Bran Cereal Coating Reels, and Finished Cereal Dryer (the "Common Pressure Gauge"); (B) a pressure gauge in the ducting at STPD 10 ("STPD 10 Pressure Gauge"); and (C) a pressure gauge in the ducting at STPD 11 ("STPD 11 Pressure Gauge").

ii. The Operating Pressure Range at the Common Pressure Gauge shall be established by Defendants during a compliance test.

iii. Operating Pressure Ranges for STPD 10 and STPD 11

1. Within 30 days after the pressure gauges have been installed, the Operating Pressure Ranges for the STPD10 and STPD 11 Pressure Gauges shall be established by Defendants using the procedure described in Attachment A to this Consent Decree.

2. Within 15 days after completing the requirement in Paragraph 12.f.iii.1 of this Consent Decree, Defendants shall submit a notification to EPA and the District that states the Operating Pressure Ranges for STPD 10 and STPD 11. This notification shall include documentation that supports the Defendants' determination of the pressure ranges for STPD 10 and STPD 11.

iv. The Operating Pressure Ranges will indicate a vacuum and be measured in negative inches of water column.

v. Within 24 hours after of establishing the Operating Pressure Ranges, Defendants shall operate the Facility such that the Operating Pressure for the Common Pressure Gauge, SPTD 10 Pressure Gauge, and SPTD

Consent Decree                                8

11 Pressure Gauge are within the established Operating Pressure Ranges during cereal manufacturing.

    vi. A deviation from the Operating Pressure Ranges measured by the Common Pressure Gauge, SPTD 10 Pressure Gauge, and SPTD 11 Pressure Gauge shall not be considered a violation of this Consent Decree if Defendants demonstrate that the deviation resulted from commencing, ceasing operation, or non-operation of these emissions units.

    g. Emission reduction credits:  VOC emission reductions that result from the installation and operation of the RTO and compliance with the VOC Control Requirements of this Decree shall not be used to generate emission reduction credits or as netting reductions or emissions offsets in any permitting transaction.  Except as specifically set forth in this subparagraph 12.g., Defendants may exercise any claim they may have with respect to any other emission reduction credits, netting reductions or emissions offsets allowed under applicable regulations.

13. Compliance Testing. Within 20 days of the date of entry of the Decree and annually thereafter, Defendants shall demonstrate compliance with: (1) the RTO VOC Reduction Efficiency, and (2) VOC Capture Efficiency for the Grape Nuts Oven, Grape Nuts Dryers, Bran Cereal Coating Reels, and Finished Cereal Dryer, as set forth herein:

    a. RTO VOC Reduction Efficiency:  The compliance testing for the VOC Reduction Efficiency shall be performed using:

        i. EPA Method 25 or 25A to measure VOC emissions;

        ii. EPA Method 2, 2A, or 2D for measuring flow rates; and

        iii. The arithmetic average of three 60-consecutive-minute test runs;

iv. Nothing in paragraph 13.a(i-iii) shall prevent Defendants from using other test methods or modifications of the test methods in paragraph 13.a(i-iii) if EPA and the District have approved such other test methods or modifications in writing prior to the occurrence of testing.

b. VOC Capture Efficiency:

    i. The compliance test for determining the direction of air flow through each NDO associated with the Grape Nuts Oven, Grape Nuts Dryers, Bran Cereal Coating Reels, and Finished Cereal Dryer shall be conducted using EPA Method ALT-20.

    ii. Upon completion of successful compliance demonstration of EPA Method ALT-20, VOC Capture Efficiency can be assumed to be 100 percent for the NDO.

c. During compliance testing, the cereal processing equipment shall be operated:

    i. At or above 90% of the maximum hourly processing capacity; and

    ii. Under representative of normal operating conditions.  A determination of compliance shall not be established within two hours after a continuous period in which fuel flow to any unit is shut off for 30 minutes or longer, or within 30 minutes after a re-lighting of any unit resulting from an unscheduled or unavoidable shut off of the fuel flow or electric power to the any unit.

d. Defendants shall meet the following milestones during compliance testing:

    i. At least 15 days prior to testing, Defendants must submit a protocol to EPA and the District for approval.

ii. At least 30 days prior to testing, Defendants must provide written notification to EPA and the District of the date(s) that testing will take place.

iii. Within 15 Days after completion of the compliance test, Defendants must submit a notification to EPA and the District that states the RTO Minimum Temperature and the Operating Pressure Ranges for the Common Pressure Gauge. This notification shall include supporting documentation on how the Defendants determined these values.

iv. Within 60 days of completion of the test, Defendants must submit the testing results to the District and to EPA.

e. If Defendants perform a compliance test within twelve months prior to the Effective Date of this Consent Decree in accordance with SJVUAPCD permit numbers N-1933-3-7 and N-1933-4-2 (the "Permit Test"), Defendants may, within twenty days of the Effective Date, submit the Permit Test results as satisfying the Initial Compliance Test requirements. EPA and the District shall notify the Defendants in writing whether they accept the Permit Test as satisfying the Initial Compliance Test requirement. The decision by EPA and the District to accept the Permit Test as satisfying the Initial Compliance Test requirement shall not be subject to Dispute Resolution, If EPA or the District does not accept the Permit Test as satisfying the Initial Compliance Test requirement ( the "Test Objection") and the Permit Test shows that the RTO satisfied Paragraph 12.a of this Consent Decree, then the Defendants shall have up to six months from the Test Objection to perform another compliance test. Defendants shall not be subject to stipulated penalties for failing to perform the Initial Compliance Test as long as they satisfy the requirements of this paragraph.

14. Operation and Maintenance Plan ("O&M Plan"):  The Defendants shall submit to EPA and the District for review an O&M Plan within 30 Days of the Effective Date of this Consent Decree.

      a.   The O&M Plan shall address at a minimum: operation and maintenance of the RTO (including required RTO Temperature monitoring and Operating Pressure monitoring for Common Pressure Gauge, STPD 10 Pressure Gauge, and STPD 11 Pressure Gauge).

      b.   The O&M Plan shall include, but need not be limited to, the following procedures: 1) identification/function of responsible facility personnel; 2) equipment inspections/inspection frequency; 3) operation and maintenance procedures; 4) identification of critical components; 5) spare parts lists/inventory; and 6) recordkeeping/reporting procedures.

15. Monitoring Requirements:

      a.   The RTO shall be permanently equipped with temperature measurement devices.

      b.   The RTO's combustion chamber temperature shall be continuously monitored and recorded at least every 15 minutes during cereal processing. The recorded temperature data shall be averaged over a 30-consecutive-minute block to demonstrate compliance with the RTO Minimum Temperature.

      c.   The Common Pressure Gauge shall be used to measure the Operating Pressure for the Grape Nuts Oven, two Grape Nuts Dryers, five Bran Cereal Coating Reels, and Finished Cereal Dryer.

      d.   The STPD 10 Pressure Gauge shall be used to measure the Operating Pressure for the Bran Cereal Coating Reels connected to the Finished Cereal Dryer.

e.   The STPD 11 Pressure Gauge shall be used to measure the Operating Pressure for the Bran Cereal Coating Reels that are not connected to the Finished Cereal Dryer.

f.   The Operating Pressures measured at the Common Pressure Gauge shall be monitored and recorded on a daily basis.  The recorded pressure data shall be used to demonstrate compliance of the Operating Pressure Range established during the compliance test for the Common Pressure Gauge.

g.   The Operating Pressure measured on STPD 10 shall be monitored and recorded on a daily basis when flakes are processed through the Bran Cereal Coating Reels connected to the Finished Cereal Dryer.  The recorded pressure data shall be used to demonstrate compliance of the Operating Pressure Range established in Paragraph 12.f. iii of this Consent Decree.

h.   The Operating Pressure measured on STPD 11 shall be monitored and recorded on a daily basis when flakes are processed through the Bran Cereal Coating Reels not connected to the Finished Cereal Dryer.  The recorded pressure data shall be used to demonstrate compliance of the Operating Pressure Range established in Paragraph 12.f. iii of this Consent Decree.

i.   Upon any deviation from the RTO Minimum Temperature and the Operating Pressures Ranges (for the Common Pressure Gauge, STPD 10 Pressure Gauge, and STPD 11 Pressure Gauge), Defendants shall investigate the temperature or pressure deviation and take corrective action to minimize excessive emissions as expeditiously as practicable.

16. Recordkeeping Requirements:

a.   Defendants shall maintain the following daily records at the Facility: (1) total quantity of Grape Nuts produced in tons/day; (2) total quantity of

flakes processed (before inlays) in tons/day; (3) total quantity of cereal flakes processed through all Bran Cereal Coating Reels in tons/day; (4) total quantity of cereal flakes processed through the Finished Cereal Dryer in tons/day; (5) RTO combustion chamber temperature; (6) Operating Pressure for the Common Pressure Gauge (in inches of water or mercury); (7) Operating Pressure for STPD 10 Pressure Gauge (in inches of water or mercury); (8) Operating Pressure for STPD 11 Pressure Gauge (in inches of water or mercury); (9) total fuel used in MMscf/day for the Grape Nuts Oven; (10) total fuel used in MMscf/day for the Finished Cereal Dryer; (11) total fuel use in MMscf/day in the RTO;  and (12)  RTO downtime and the reason of downtime.

    b.  Defendants shall maintain records of deviations from the RTO Minimum Temperature requirement in Paragraph 12.e. of this Consent Decree.

    c.  Defendants shall maintain records of deviations of the Operating Pressure Ranges (for the Common Pressure Gauge, STPD 10 Pressure Gauge and STPD 11 Pressure Gauge) requirement in Paragraph 12.f. of this Consent Decree.

## VI.   REPORTING REQUIREMENTS

17. Quarterly Reports:

    a.  Within 30 Days after the end of each calendar year quarter (i.e., by April 30, July 30, October 30, and January 30) following the Effective Date of this Consent Decree, until termination of this Decree pursuant to Section XVII (Termination), Defendants shall submit a quarterly report to EPA and the District that includes the following: A quarterly summary of: (1) total operating hours of the RTO; (2) number of hours and percentage of down-time of the RTO (i.e., hours when the RTO is by-passed due to a malfunction); (3) number of hours and percentage of time that the RTO

Consent Decree          14

temperature is below the RTO Minimum Temperature established during compliance testing;  (4) number of hours and percentage of time the RTO temperature recording device is inoperative; and (5) excursions recorded as required by Paragraph 16 of this Consent Decree.

    b.   Each quarterly report shall also include a description of any non-compliance with the requirements of this Consent Decree and an explanation of the violation's likely cause and of the remedial steps taken, or to be taken, to prevent or minimize such violation.

    c.   Quarterly reports can be submitted in an electronic format.

18. If Defendants violate, or are on notice that they may materially violate, any requirement Section V of this Consent Decree, Defendants shall notify the United States and the District of such violation and its likely duration, in writing, within ten business Days of the Day Defendants first become aware of the violation or prospective violation, with an explanation of the violation's likely cause and of the remedial steps taken, or to be taken, to prevent or minimize such violation.  If the cause of a violation cannot be fully explained at the time the notification is due, Defendants shall so state in the notification.  Defendants shall investigate the cause of the violation and shall then provide a full explanation of the cause of the violation in the next quarterly report due pursuant to Paragraph 17.  Nothing in this Paragraph or the following Paragraph relieves Defendants of their obligation to provide the notice required by Section VIII (Force Majeure) of this Consent Decree.

19. Whenever any violation of this Consent Decree or of any applicable permits or any other event affecting Defendants' performance under this Decree, or the performance of the Facility may pose an immediate threat to the public health or welfare or the environment, Defendants shall notify EPA and the District orally or by electronic or facsimile transmission as soon as possible, but no later than 24 hours after Defendants first knew of the violation or event.  This procedure is in addition to the requirements set forth in the preceding Paragraph.

Consent Decree            15

20. All reports shall be submitted to the persons designated in Section XIII (Notices) of this Consent Decree.

21. Each report submitted by Defendants under this Section shall be signed by an official of Defendants and include the following certification:

I certify under penalty of law that this document and all attachments were prepared under my direction or supervision in accordance with a system designed to assure that qualified personnel properly gather and evaluate the information submitted. Based on my inquiry of the person or persons who manage the system, or those persons directly responsible for gathering the information, the information submitted is, to the best of my knowledge and belief, true, accurate, and complete. I am aware that there are significant penalties for submitting false information, including the possibility of fine and imprisonment for knowing violations.

This certification requirement does not apply to emergency or similar notifications where compliance would be impractical.

22. The reporting requirements of this Consent Decree do not relieve Defendants of any reporting obligations required by the Clean Air Act or implementing regulations, or by any other federal, state, or local law, regulation, permit, or other requirement.

23. Any information provided pursuant to this Consent Decree may be used by the United States in any proceeding to enforce the provisions of this Consent Decree and as otherwise permitted by law.

**VII.   STIPULATED PENALTIES**

24. Defendants shall be liable for stipulated penalties to the United States and the District for violations of this Consent Decree as specified below, unless excused under Section VIII (Force Majeure). A violation includes failing to perform any obligation required by the terms of this Decree, including any work plan or schedule approved under this Decree, according to all applicable requirements of this Decree and within the specified time schedules established by or approved under this Decree.

25. Late Payment of Civil Penalty. If Defendants fail to pay the entirety of the civil penalty required to be paid under Section IV (Civil Penalty) of this Decree to both

Plaintiffs when due, Defendants shall pay a stipulated penalty of $5,000 per Day for each Day that the payment, to either or both Plaintiffs, is late.

26. VOC Control Requirements.

    a.  The following stipulated penalties shall accrue per calendar day when there is one or more violations of the RTO Minimum Temperature in Paragraph 12.e above:

| Penalty Per Violation Per Period | Period of Noncompliance |
| --- | --- |
| $500 | 1st day (or any fraction thereof) |
| $1,000 | 2nd to 10th days |
| $2,000 | 11th to 30th day |
| $3,000 | 31st day and each day beyond |

    b.  The following stipulated penalties shall accrue per violation of each calendar day (or fraction thereof) of requirements Paragraphs 12.a, 12.b, 12.c, 12.f above:

| Penalty per Violation per Day | Period of Noncompliance |
| --- | --- |
| $500 | 1st through 7th day |
| $750 | 8th through 14th day |
| $1,000 | 15th day and beyond |

27. VOC Compliance Testing. The following stipulated penalties shall accrue per violation per calendar day for each violation of the requirements related to compliance testing as required by Paragraphs 13.a, 13.b, and 13.c of this Consent Decree:

| Penalty per Violation per Day | Period of Noncompliance |
| --- | --- |
| $500 | 1st through 14th day |
| $750 | 15th through 30th day |
| $1,000 | 31st day and beyond |

28. O&M Plan Requirement. The following stipulated penalties shall accrue per violation per calendar day for each violation of the requirements for development and submittal of an O&M Plan as required by Paragraph 14 of this Consent Decree:

| Penalty per Violation per Day | Period of Noncompliance |
|---|---|
| $500 | 1st through 30th day |
| $1,000 | 31st day and beyond |

29. For Defendant's failure to comply with any other requirement of Sections V and VI of this Consent Decree not specifically referenced in Paragraphs 26-28 above:

| Penalty per Violation per Calendar Day | Period of Noncompliance |
|---|---|
| $250 | 1st through 14th day |
| $500 | 15th through 30th day |
| $1,000 | 31st day and beyond |

30. Stipulated penalties under this Section shall begin to accrue on the calendar day after performance is due or on the calendar day a violation occurs, whichever is applicable, and shall continue to accrue until performance is satisfactorily completed or until the violation ceases. Except as otherwise provided, stipulated penalties shall accrue simultaneously for separate violations of this Consent Decree.

31. The United States, or the District, or both, may seek stipulated penalties under this Section by sending a joint written demand to Defendants, or by either Plaintiff sending a written demand to the Defendants, with a copy simultaneously sent to the other Plaintiff. Either Plaintiff may waive stipulated penalties or reduce the amount of stipulated penalties it seeks, in the unreviewable exercise of its discretion and in accordance with this Paragraph. Where both Plaintiffs seek stipulated penalties for the same violation of this Consent Decree, Defendants shall pay fifty percent to the United States and fifty percent to the District. Where only one Plaintiff demands stipulated penalties for a violation, and the other sovereign does not join in the demand within ten Days of receiving the demand, or timely joins in the demand but subsequently elects to waive or reduce stipulated penalties for that violation, Defendants shall pay the full stipulated penalties due for the violation to the Plaintiff making the demand less any amount paid to the other Plaintiff.

Consent Decree                                    18

32. Stipulated penalties shall continue to accrue as provided in Paragraph 30, during any Dispute Resolution, but need not be paid until the following:

    a.  If the dispute is resolved by agreement or by a decision of EPA or the District that is not appealed to the Court, Defendants shall pay accrued penalties determined to be owing, together with interest, to the United States or the District, or to both, within 30 Days of the effective date of the agreement or the receipt of EPA's or the State's decision or order.

    b.  If the dispute is appealed to the Court and the United States or the District prevails in whole or in part, Defendants shall pay all accrued penalties determined by the Court to be owing, together with interest, within 60 Days of receiving the Court's decision or order, except as provided in subparagraph c, below.

    c.  If any Party appeals the District Court's decision, Defendants shall pay all accrued penalties determined to be owing, together with interest, within 15 Days of receiving the final appellate court decision.

33. Defendants shall pay stipulated penalties owing to the United States in the manner set forth and with the confirmation notice required by Paragraph 9, except that the transmittal letter shall state that the payment is for stipulated penalties and shall state for which violation(s) the penalties are being paid.  Defendants shall pay stipulated penalties owing to the District in the manner set forth and in Paragraph 11, except that the transmittal letter shall state that the payment is for stipulated penalties and shall state for which violation(s) the penalties are being paid.

34. If Defendants fail to pay stipulated penalties according to the terms of this Consent Decree, Defendants shall be liable for interest on such penalties, as provided for in 28 U.S.C. § 1961, accruing as of the date payment became due.  Nothing in this Paragraph shall be construed to limit the United States or the District from seeking any remedy otherwise provided by law for Defendants' failure to pay any stipulated penalties.

35. Subject to the provisions of Section XI (Effect of Settlement/Reservation of Rights) of this Consent Decree, the stipulated penalties provided for in this Consent Decree shall be in addition to any other rights, remedies, or sanctions available to the United States for Defendants' violation of this Consent Decree or applicable law.  Where a violation of this Consent Decree is also a violation of the Clean Air Act, the California Health and Safety Code and District regulations, Defendants shall be allowed a credit, for any stipulated penalties paid, against any statutory penalties imposed for such violation.

## VIII.   FORCE MAJEURE

36. "Force majeure," for purposes of this Consent Decree, is defined as any event arising from causes beyond the control of Defendants, of any entity controlled by Defendants, or of Defendants' contractors, that delays or prevents the performance of any obligation under this Consent Decree despite Defendants' best efforts to fulfill the obligation.  The requirement that Defendants exercise "best efforts to fulfill the obligation" includes using best efforts to anticipate any potential force majeure event and best efforts to address the effects of any such event (a) as it is occurring and (b) after it has occurred to prevent or minimize any resulting delay to the greatest extent possible.  "Force majeure" does not include Defendants' financial inability to perform any obligation under this Consent Decree.

37. If any event occurs or has occurred that may delay the performance of any obligation under this Consent Decree, whether or not caused by a force majeure event, Defendants shall provide notice orally or by electronic or facsimile transmission to Manager, Air and TRI Enforcement Office (ENF-2-1), Enforcement Division, U.S. Environmental Protection Agency, Region IX, within 72 hours of when Defendants first knew that the event might cause a delay.  Within seven days thereafter, Defendants shall provide in writing to EPA and the District an explanation and description of the reasons for the delay; the anticipated duration of the delay; all actions taken or to be taken to prevent or minimize the delay; a schedule for implementation of any measures to be taken to prevent or mitigate the delay or the

effect of the delay; Defendants' rationale for attributing such delay to a force majeure event if it intends to assert such a claim; and a statement as to whether, in the opinion of Defendants, such event may cause or contribute to an endangerment to public health, welfare or the environment. Defendants shall include with any notice all available documentation supporting the claim that the delay was attributable to a force majeure. Failure to comply with the above requirements shall preclude Defendants from asserting any claim of force majeure for that event for the period of time of such failure to comply, and for any additional delay caused by such failure. Defendants shall be deemed to know of any circumstance of which Defendants, any entity controlled by Defendants, or Defendants' contractors knew or should have known.

38. If EPA, after a reasonable opportunity for review and comment by the District, agrees that the delay or anticipated delay is attributable to a force majeure event, the time for performance of the obligations under this Consent Decree that are affected by the force majeure event will be extended by EPA, after a reasonable opportunity for review and comment by the District, for such time as is necessary to complete those obligations. An extension of the time for performance of the obligations affected by the force majeure event shall not, of itself, extend the time for performance of any other obligation. EPA will notify Defendants in writing of the length of the extension, if any, for performance of the obligations affected by the force majeure event.

39. If EPA, after a reasonable opportunity for review and comment by the District, does not agree that the delay or anticipated delay has been or will be caused by a force majeure event, EPA will notify Defendants in writing of its decision.

40. If Defendants elect to invoke the dispute resolution procedures set forth in Section IX (Dispute Resolution), they shall do so no later than 15 Days after receipt of EPA's notice. In any such proceeding, Defendants shall have the burden of demonstrating by a preponderance of the evidence that the delay or anticipated delay has been or will be caused by a force majeure event, that the duration of the delay or the extension sought was or will be warranted under the circumstances, that best efforts were exercised to

avoid and mitigate the effects of the delay, and that Defendants complied with the requirements of Paragraphs 36 and 37, above.  If Defendants carry this burden, the delay at issue shall be deemed not to be a violation by Defendants of the affected obligation of this Consent Decree identified to EPA and the Court.

## IX.   DISPUTE RESOLUTION

41. Unless otherwise expressly provided for in this Consent Decree, the dispute resolution procedures of this Section shall be the exclusive mechanism to resolve disputes arising under or with respect to this Consent Decree.  Defendants' failure to seek resolution of a dispute under this Section shall preclude Defendants from raising any such issue as a defense to an action by the United States or the District to enforce any obligation of Defendants arising under this Decree.

42. Informal Dispute Resolution.  Any dispute subject to Dispute Resolution under this Consent Decree shall first be the subject of informal negotiations.  The dispute shall be considered to have arisen when Defendants send the United States and the District a written Notice of Dispute.  Such Notice of Dispute shall state clearly the matter in dispute.  The Parties receiving such a notice shall acknowledge receipt of the notice and the Parties shall expedite scheduling of a meeting (which may occur in person or by telephone conference).  The period of informal negotiations shall not exceed 20 Days from the date the dispute arises, unless that period is modified by written agreement of the Parties.  If the Parties cannot resolve a dispute by informal negotiations, then the position advanced by the United States and the District shall be considered binding unless, within 10 Days after the conclusion of the informal negotiation period, Defendants invoke formal dispute resolution procedures as set forth below.

43. Formal Dispute Resolution.  Defendants shall invoke formal dispute resolution procedures, within the time period provided in the preceding Paragraph, by serving on the United States and the District a written Statement of Position regarding the matter in dispute.  The Statement of Position shall include, but need not be limited to, any

factual data, analysis, or opinion supporting Defendants' position and any supporting documentation relied upon by Defendants.

44. The United States and District shall serve their Statement of Position within 45 Days of receipt of Defendants' Statement of Position. The United States' and District's Statement of Position shall include, but need not be limited to, any factual data, analysis, or opinion supporting that position and any supporting documentation relied upon by them. The United States' and District's Statement of Position shall be binding on Defendants, unless Defendants file a motion for judicial review of the dispute in accordance with the following Paragraph.

45. Defendants may seek judicial review of the dispute by filing with the Court and serving on the United States and the District, in accordance with Section XIII (Notices) of this Consent Decree, a motion requesting judicial resolution of the dispute. The motion must be filed within 10 Days of receipt of the United States' and District's Statement of Position pursuant to the preceding Paragraph. The motion shall contain a written statement of Defendants' position on the matter in dispute, including any supporting factual data, analysis, opinion, or documentation, and shall set forth the relief requested and any schedule within which the dispute must be resolved for orderly implementation of the Consent Decree.

46. The United States and District shall respond to Defendants' motion within the time period allowed by the Local Rules of this Court. Defendants may file a reply memorandum, to the extent permitted by the Local Rules.

47. Standard of Review

    a. Disputes Concerning Matters Accorded Record Review. Except as otherwise provided in this Consent Decree, in any dispute brought under Paragraph 43 pertaining to the adequacy or appropriateness of plans, procedures to implement plans, schedules or any other items requiring approval by EPA and the District under this Consent Decree and all other disputes that are accorded review on the administrative

record under applicable principles of administrative law, Defendants shall have the burden of demonstrating, based on the administrative record, that the position of the United States and District is arbitrary and capricious or otherwise not in accordance with law.

    b.  <u>Other Disputes</u>.  Except as otherwise provided in this Consent Decree, in any other dispute brought under Paragraph 43, Defendants shall bear the burden of demonstrating that their position complies with this Consent Decree.

48. The invocation of dispute resolution procedures under this Section shall not, by itself, extend, postpone, or affect in any way any obligation of Defendants under this Consent Decree, unless and until final resolution of the dispute so provides.  Stipulated penalties with respect to the disputed matter shall continue to accrue from the first Day of noncompliance, but payment shall be stayed pending resolution of the dispute as provided in Paragraph 32.  If Defendants do not prevail on the disputed issue, stipulated penalties shall be assessed and paid as provided in Section VII (Stipulated Penalties).

### X.   INFORMATION COLLECTION AND RETENTION

49. The United States, the District, and their representatives, including attorneys, contractors, and consultants, shall have the right of entry into any facility covered by this Consent Decree, at all reasonable times, upon presentation of credentials, to:

    a.  monitor the progress of activities required under this Consent Decree;

    b.  verify any data or information submitted to the United States or the District in accordance with the terms of this Consent Decree;

    c.  obtain samples and, upon request, splits of any samples taken by Defendant or their representatives, contractors, or consultants;

    d.  obtain documentary evidence, including photographs and similar data; and

    e.  assess Defendants' compliance with this Consent Decree.

50. Until three years after the termination of this Consent Decree, Defendants, or their successors or assigns, shall retain, and shall instruct their contractors and agents to preserve, all non-identical copies of all documents, records, or other information (including documents, records, or other information in electronic form) in their or their contractors' or agents' possession or control, or that come into their or their contractors' or agents' possession or control, and that relate in any manner to Defendants' performance of its obligations under this Consent Decree.  This information-retention requirement shall apply regardless of any contrary corporate or institutional policies or procedures.  At any time during this information-retention period, upon request by the United States or the District, Defendants shall provide copies of any documents, records, or other information required to be maintained under this Paragraph.

51. At the conclusion of the information-retention period provided in the preceding Paragraph, Defendants shall notify the United States and the District at least 90 Days prior to the destruction of any documents, records, or other information subject to the requirements of the preceding Paragraph and, upon request by the United States or the District, Defendants shall deliver any such documents, records, or other information to EPA or the District.

52. Defendants may assert that certain documents, records, or other information is privileged under the attorney-client privilege or any other privilege recognized by federal law.  If Defendants assert such a privilege, they shall provide the following: (1) the title of the document, record, or information; (2) the date of the document, record, or information; (3) the name and title of each author of the document, record, or information; (4) the name and title of each addressee and recipient; (5) a description of the subject of the document, record, or information; and (6) the privilege asserted by Defendants.  However, no documents, records, or other information created or generated pursuant to the requirements of this Consent Decree shall be withheld on grounds of privilege.

Consent Decree                                    25

53. Defendants may also assert that information required to be provided under this Section is protected as Confidential Business Information ("CBI") under 40 C.F.R. Part 2. As to any information that Defendants seek to protect as CBI, Defendants shall follow the procedures set forth in 40 C.F.R. Part 2.

54. This Consent Decree in no way limits or affects any right of entry and inspection, or any right to obtain information, held by the United States or the District pursuant to applicable federal or state laws, regulations, or permits, nor does it limit or affect any duty or obligation of Defendants to maintain documents, records, or other information imposed by applicable federal or state laws, regulations, or permits.

## XI.   EFFECT OF SETTLEMENT/RESERVATION OF RIGHTS

55. Except as expressly provided for herein, this Consent Decree resolves the civil claims of the United States and the District against the Defendants for the violations alleged in the Complaint filed in this action and the Notices of Violation regarding air emissions at the Modesto facility that were issued by the District and EPA on July 16, 2009,  August 18, 2009, and October 8, 2009, through the Date of Lodging of the Consent Decree.

56. The United States and the District reserve all legal and equitable remedies available to enforce the provisions of this Consent Decree, except as expressly stated in Paragraph 55.  This Consent Decree shall not be construed to limit the rights of the United States or the District to obtain penalties or injunctive relief under the Act or implementing regulations, or under other federal or state laws, regulations, or permit conditions, except as expressly specified in Paragraph 55.  The United States and the District further reserve all legal and equitable remedies to address any imminent and substantial endangerment to the public health or welfare or the environment arising at, or posed by, Defendants' Facility, whether related to the violations addressed in this Consent Decree or otherwise.

57. In any subsequent administrative or judicial proceeding initiated by the United States or the District for injunctive relief, civil penalties, or other appropriate relief relating to

the Facility, Defendants shall not assert, and may not maintain, any defense or claim based upon the principles of waiver, *res judicata*, collateral estoppel, issue preclusion, claim preclusion, claim-splitting, or other defenses based upon any contention that the claims raised by the United States or the District in the subsequent proceeding were or should have been brought in the instant case, except with respect to claims that have been specifically resolved pursuant to Paragraph 55 of this Section.

58. This Consent Decree is not a permit, or a modification of any permit, under any federal, State, or local laws or regulations. Defendants are responsible for achieving and maintaining complete compliance with all applicable federal, State, and local laws, regulations, and permits; and Defendants' compliance with this Consent Decree shall be no defense to any action commenced pursuant to any such laws, regulations, or permits, except as set forth herein. The United States and the District do not, by their consent to the entry of this Consent Decree, warrant or aver in any manner that Defendants' compliance with any aspect of this Consent Decree will result in compliance with provisions of the Act, 42 U.S.C. § 7401 *et seq.*, or with any other provisions of federal, State, or local laws, regulations, or permits.

59. This Consent Decree does not limit or affect the rights of Defendants or of the United States or the District against any third parties, not party to this Consent Decree, nor does it limit the rights of third parties, not party to this Consent Decree, against Defendants, except as otherwise provided by law.

60. This Consent Decree shall not be construed to create rights in, or grant any cause of action to, any third party not a Party to this Consent Decree.

## XII.   COSTS

61. The Parties shall bear their own costs of this action, including attorneys' fees, except that the United States and the District shall be entitled to collect the costs (including attorneys' fees) incurred in any action necessary to collect any portion of the civil penalty or any stipulated penalties due but not paid by Defendants.

Consent Decree                                    27

# XIII.   NOTICES

62. Unless otherwise specified herein, whenever notifications, submissions, or communications are required by this Consent Decree, they shall be made in writing and addressed as follows:

To the United States:

Chief, Environmental Enforcement Section
Environment and Natural Resources Division
U.S. Department of Justice
Box 7611 Ben Franklin Station
Washington, D.C.  20044-7611
Re: DOJ No. 90-5-2-1-10136

and

Kara Christenson (ORC-2)
Office of Regional Counsel
U.S. Environmental Protection Agency, Region IX
75 Hawthorne Street
San Francisco, California 94105

To EPA:

Director, Enforcement Division (ENF-1)
U.S. Environmental Protection Agency, Region IX
75 Hawthorne Street
San Francisco, CA 94105
Attn: Cyntia Steiner, ENF-2-1

To the District:

District Counsel's Office
San Joaquin Valley Unified Air Pollution Control District
1990 E. Gettysburg Avenue
Fresno, CA 93726

and

Director of Compliance
San Joaquin Valley Unified Air Pollution Control District
1990 E. Gettysburg Avenue
Fresno, CA 93726

Consent Decree                                    28

To Defendants:

Gregory A. Billhartz
Corporate Vice President, General Counsel and Secretary
Ralcorp Holdings, Inc.
800 Market Street
St. Louis, MO 63102-2750

Diedre J. Gray
Senior Vice President, General Counsel and Secretary
Post Holdings, Inc.
2503 South Hanley Road
St. Louis, MO 63144
With a copy to:

Steven J. Poplawski, Esq.
Bryan Cave, LLP
One Metropolitan Square
211 North Broadway, Suite 3600
St. Louis, MO  63102-2750

63. Any Party may, by written notice to the other Parties, change its designated notice recipient or notice address provided above.

64. Notices submitted pursuant to this Section shall be deemed submitted upon mailing, unless otherwise provided in this Consent Decree or by mutual agreement of the Parties in writing.

### XIV.  EFFECTIVE DATE

65. The Effective Date of this Consent Decree shall be the date upon which this Consent Decree is entered by the Court or a motion to enter the Consent Decree is granted, whichever occurs first, as recorded on the Court's docket.

### XV.  RETENTION OF JURISDICTION

66. The Court shall retain jurisdiction over this case until termination of this Consent Decree, for the purpose of resolving disputes arising under this Decree or entering orders modifying this Decree, pursuant to Sections IX (Modification) and XVI (Dispute Resolution), or effectuating or enforcing compliance with the terms of this Decree.

## XVI.   **MODIFICATION**

67. The terms of this Consent Decree, including any attached appendices, may be modified only by a subsequent written agreement signed by all the Parties.  Where the modification constitutes a material change to this Decree, it shall be effective only upon approval by the Court.

68. Any disputes concerning modification of this Decree shall be resolved pursuant to Section IX (Dispute Resolution) of this Decree, provided, however, that, instead of the burden of proof provided by Paragraph 47, the Party seeking the modification bears the burden of demonstrating that it is entitled to the requested modification in accordance with Federal Rule of Civil Procedure 60(b).

## XVII.   **TERMINATION**

69. After Defendants have maintained continuous satisfactory compliance with this Consent Decree for one year from the Effective date, have paid the civil penalty and any accrued interest and stipulated penalties as required by this Consent Decree, and have obtained a District operating permit that specifies a RTO Minimum Temperature and an emission factor for calculation of VOC emissions, Defendants may serve upon the United States and the District a Request for Termination, stating that Defendants have satisfied those requirements, together with all necessary supporting documentation.

70. Following receipt by the United States and the District of Defendants' Request for Termination, the Parties shall confer informally concerning the Request and any disagreement that the Parties may have as to whether Defendants have satisfactorily complied with the requirements for termination of this Consent Decree.  If the United States, after consultation with the District, agrees that the Decree may be terminated, the Parties shall submit, for the Court's approval, a joint stipulation terminating the Decree.

71. If the United States, after consultation with the District, does not agree that the Decree may be terminated, Defendants may invoke Dispute Resolution under Section IX of

Consent Decree                    30

this Decree. However, Defendants shall not seek Dispute Resolution of any dispute regarding termination, under Paragraph 43 of Section IX, until 30 Days after service of its Request for Termination.

## XVIII. PUBLIC PARTICIPATION

72. This Consent Decree shall be lodged with the Court for a period of not less than 30 Days for public notice and comment in accordance with 28 C.F.R. § 50.7. The United States reserves the right to withdraw or withhold its consent if the comments regarding the Consent Decree disclose facts or considerations indicating that the Consent Decree is inappropriate, improper, or inadequate. Defendants consent to entry of this Consent Decree without further notice and agree not to withdraw from or oppose entry of this Consent Decree by the Court or to challenge any provision of the Decree, unless the United States has notified Defendants in writing that it no longer supports entry of the Decree.

## XIX. SIGNATORIES/SERVICE

73. Each undersigned representative of Defendants, the District and the Assistant Attorney General for the Environment and Natural Resources Division of the Department of Justice, certifies that he or she is fully authorized to enter into the terms and conditions of this Consent Decree and to execute and legally bind the Party he or she represents to this document.

74. This Consent Decree may be signed in counterparts, and its validity shall not be challenged on that basis. Defendants agree to accept service of process by mail or email with respect to all matters arising under or relating to this Consent Decree and to waive the formal service requirements set forth in Rules 4 and 5 of the Federal Rules of Civil Procedure and any applicable Local Rules of this Court including, but not limited to, service of a summons. The Parties agree that Defendants need not file an answer to the complaint in this action unless or until the Court expressly declines to enter this Consent Decree.

## XX.   <u>INTEGRATION</u>

75. This Consent Decree constitutes the final, complete, and exclusive agreement and understanding among the Parties with respect to the settlement embodied in the Decree and supersedes all prior agreements and understandings, whether oral or written, concerning the settlement embodied herein.  Other than deliverables that are subsequently submitted and approved pursuant to this Decree, no other document, nor any representation, inducement, agreement, understanding, or promise, constitutes any part of this Decree or the settlement it represents, nor shall it be used in construing the terms of this Decree.

## XXI.   <u>FINAL JUDGMENT</u>

76.     Upon approval and entry of this Consent Decree by the Court, this Consent Decree shall constitute a final judgment of the Court as to the United States, the District, and Defendants.

SO ORDERED.

Dated and entered this 20th day of  November  , 2013 .

/s/ Lawrence J. O'Neill

UNITED STATES DISTRICT JUDGE
Eastern District of California

1

2   WE HEREBY CONSENT to this Consent Decree, subject to the public notice and comment

3   provisions of 28 C.F.R. § 50.7:

4

5

6

7   FOR PLAINTIFF UNITED STATES OF AMERICA:

8

9   9/3/13
    DATE:
10                              ROBERT G. DREHER
                                Acting Assistant Attorney General
11                              Environment and Natural Resources Division
                                U.S. Department of Justice
12

13

14

15   _____
    DATE:                       LORI JONAS
16                              Senior Attorney
                                Environment and Natural Resources Division
17                              U.S. Department of Justice
                                P.O. Box 7611
18                              Washington, DC 20044-7611
                                Telephone: (202) 514-4080
19                              lori.jonas@usdoj.gov

20

21

22

23

24

25

26

27

28

Consent Decree                      33

1  FOR PLAINTIFF UNITED STATES OF AMERICA (continued):

2

3  7/22/13
   DATE:                                    JARED BLUMENFELD

4                                           Regional Administrator
                                            United States Environmental Protection Agency, Region IX
5

6

7

8  7/22/13
9  DATE:                                    ROBERT MOYER
                                            Acting Regional Counsel
10                                          United States Environmental Protection Agency, Region IX
                                            CYNTHIA J. GILES
11                                          Assistant Administrator for Enforcement
                                            and Compliance Assurance
12                                          United States Environmental Protection Agency

13

14

15
   OF COUNSEL:
16

17 KARA CHRISTENSON
   Senior Counsel
18 U.S. Environmental Protection Agency, Region IX
   75 Hawthorne Street
19 San Francisco, California  94105

20

21

22

23

24

25

26

27

28

   Consent Decree                    34

1  FOR PLAINTIFF SAN JOAQUIN VALLEY UNIFIED AIR POLLUTION CONTROL
2  DISTRICT:

3
4  DATE: 6·14·13

   CATHERINE T. REDMOND
5  District Counsel
   San Joaquin Valley Unified Air Pollution Control District
6
7  DATE: 6·20·13
8
   SEYED SADREDIN
   Executive Director
9  San Joaquin Valley Unified Air Pollution Control District
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Consent Decree                          35

1  FOR DEFENDANT POST HOLDINGS, INC. :

2

3

4  DATE: June 14, 2013

5  Diedre J. Gray
   SVP, General Counsel and Secretary

6

7

8

9

10

11

12  FOR DEFENDANT RALCORP HOLDINGS, INC.:

13

14

15

16  DATE:

17

18

19

20

21

22

23

24

25

26

27

28

Consent Decree                    36

1  FOR DEFENDANT POST HOLDINGS, INC. :

2

3

4  DATE:

5

6

7

8

9

10

11

12  FOR DEFENDANT RALCORP HOLDINGS, INC.:

13

14

15  7/22/13

16  DATE:

Colleen Batchelen – Vice President

17

18

19

20

21

22

23

24

25

26

27

28

Consent Decree                           37

ATTACHMENT A:

Procedure for Establishing Operating Pressure Ranges for STPD 10 and STPD 11

Defendant shall use the following procedure to establish the Operating Pressure Ranges for STPD 10 Pressure Gauge and STPD 11 Pressure Gauge.

1.  Defendant will certify that the Facility has not modified or altered the equipment or operating conditions between the dates it conducted EPA Method ALT-20 testing and the establishment of these Operating Pressure Ranges for STPD 10 and STPD 11 other than by installing the STPD 10 Pressure Gauge and STPD 11 Pressure Gauge.

2.  Defendant will use the following procedure to establish Operating Pressure Ranges for STPD 10 and 11:

    a.  Defendant will verify and document proper set up of ventilation ducting feeding STPD 10.

    b.  Defendant will verify and document that STPD 10 ducts are properly reinstalled after cleaning.

    c.  Defendant will open RTO blocking dampers so flow from the rotoclone for STPD 10 is directed to the RTO.

        i.  Defendant will record static pressure from STPD 10 Pressure Gauge. This reading will establish P1 as the first endpoint of the Operating Pressure Range.

        ii.  Defendant will document the RTO duct volume control damper position.

    d.  Defendant will move the RTO duct volume control damper for the STPD 10 rotoclone by opening damper one additional stop.

        i.  This will increase air flow from rotoclone to the RTO.

        ii.  Defendant will record the static pressure at the increased flow rate. This reading will establish P2 as the second end point of the Operating Pressure Range.

Consent Decree                38

iii.  Defendant will document the RTO duct volume control damper position.

e.  Defendant will establish the acceptable Operating Pressure Range as all points between, and including, P1 and P2 for STPD 10.

f.  Defendant will repeat the procedure set forth in 2 a – e for STPD 11.